## Jillson v. Restein.

*Affidavit of defense—Contract—Damages—Set-off.*

An affidavit of defense which does not deny the debt claimed, but sets off damages alleged to have been caused by the failure of the plaintiff to deliver goods contracted to be sold to defendant in another transaction, is insufficient where the defendant states that he received part of the goods, but in such language as not to indicate what proportion the goods received were to the whole order, and fails to state the price at which the goods were ordered, or in what market other goods had been purchased in place of those ordered.

Where an affidavit of defense sets up a breach of a contract other than the contract sued upon, and it appears that such contract was made by correspondence, copies of the letters constituting the contract should be attached to the affidavit of defense.   Merely stating the alleged substance of the letters is not a proper way to state the contract.

Argued Oct. 19, 1900.   Appeal, No. 173, Oct. T., 1900, by defendants, from order of C. P. No. 3, Phila. Co., June T., 1900, No. 258, making absolute a rule for judgment for want of a sufficient affidavit of defense in case of Oscar A. Jillson and Robert Bellew, trading as Star Tanning Company, v. Clement Restein and Samuel B. Smith, trading as Clement Restein & Company.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Assumpsit for goods sold and delivered.
The affidavit of defense was as follows:

**1.** It is true that on February 2, 1898, the defendants sent to plaintiffs a written order for leather goods a copy of which is attached to the plaintiffs' statement and marked exhibit "A" and that the plaintiffs delivered said goods to the defendant on February 9, 1898, together with a bill for same amounting to $74.38, but notwithstanding this the defendants deny owing plaintiffs the sum of $74.38, and on the contrary the defendants claim that they are only indebted to the plaintiffs in the sum of $37.92, which said sum was tendered to plaintiffs at the hearing before the magistrate in this case and the same was refused by said plaintiffs. As to all sums over and above the sum of $37.92, defendants claim a set-off as a result of other dealing between the parties, which is based upon the following statement of facts:

On August 2, 1897, the defendants sent to plaintiffs a written order for goods, a true and correct copy of which is hereto attached and marked exhibit "B."

The plaintiffs acknowledged the receipt of said order and agreed to furnish the goods ordered in kind and of the quality and on the conditions named in said order, and on or about August 11, 1897, shipped certain goods for the filling of said order, and on August 13, 1897, same were delivered to and opened by defendants. Upon inspecting the goods defendants found that all of said goods were of inferior quality and not in accordance with goods ordered and mentioned in said order, except 815 feet and six inches of rawhide lacing in sides which defendants retained and paid for. The balance of said goods were shipped back to plaintiffs with a request that plaintiffs send the kind and quality of goods specified in said order. Plaintiffs answered and stated that said goods would be sent according to order at the earliest possible moment. Plaintiffs never sent the goods as requested and in accordance with their promise, and the defendants on November 26, 1897, were compelled to go out in the market and purchase said goods at an advance in price as follows, to wit:

| | | |
|---|---|---|
| 363 feet R. H. Lacing @ 16 c. per foot . . | | $58 05 |
| 11000 " ⅜ in. R. H. lacing @ $1.50 per foot | $165 00 | |
| 11000 " ½ " " " 2.00 " " | 220 00 | |
| Amount carried forward, | $385 00 | |

|  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  | Amount brought forward, |  |  |  | $385 | 00 |  |
| 2500 | " | $\frac{5}{8}$ " | " | " | 2.75 | " | " | 68 | 75 |  |
| 500 | " | $\frac{3}{4}$ " | " | . " | 3.25 | " | " | 16 | 25 |  |
|  |  |  |  |  |  |  |  | $470 | 00 |

Less 60—10 2 $\frac{1}{2}$% discount . . . . . 164 97

Amount paid less discount. . . . . $223 05

The above prices being the market price at the time of purchase as aforesaid which was made after giving plaintiffs a reasonable time to perform said contract with defendants to furnish said goods.

The same quality and amount of goods would have cost defendants had plaintiffs furnished said goods according to order marked exhibit " B " only the sum of $186.59 making a difference as will appear by reference to above amount of $36.46 more than defendants would have paid for said goods had plaintiffs fulfilled their part of said contract in sending defendants the kind and quality of goods mentioned in said order. And for this sum the defendants claim they have a right of set-off against the demand of plaintiffs in this case.

All of which defendants aver is just and true and expect to be able to prove on the trial of this cause.

The order referred to in the affidavit of defense was as follows:

"PHILADELPHIA, August 2, 1897.

"STAR TANNING COMPANY,

"PAWTUCKET, R. I.

"Please enter our order for the following and ship quickly as possible, unless otherwise ordered. Also notice the conditions below before booking the order. Ship via freight as quick as possible:

2 doz. sides Rawhide Lace

Large sides from 20 to 25 ft. each.

3 doz. sides Rawhide lace

from 16 to 20 feet each.

11000 ft. $\frac{3}{8}$ Cut Lace Rawhide.

11000 " $\frac{1}{2}$ " " "

2500 " $\frac{5}{8}$ " " "

500 " $\frac{3}{4}$ " " "

" Price to be 14½ cents per foot on side lace 70 & 5% on Cut Lace.

" Quality guaranteed to be equal to the best you have ever sent us.

" 1. Mark the number of this order on your bill.

" 2. Please acknowledge receipt of this order, and specify time when it will be shipped.

" 3. If prices are not specified they are understood to be no higher than last bill or quotation.

" 4. Please send bills promptly for each delivery or shipment.

" 5. If you cannot fill this order advise at once.

" 6. No charges allowed for packing and cartage.

" CLEMENT RESTEIN & Co.,<br>By C. R."

The court made absolute the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*W. W. Smithers*, for appellant.—Unliquidated damages, arising ex contractu from any bargain, may be set off under the defalcation act, in an action upon another and distinct contract, whenever they are capable of liquidation by any known legal standard: Hunt v. Gilmore, 59 Pa. 450; Watson v. Phila., 142 Pa. 179.

*Harry E. Kohn*, for appellees.—The affidavit alleges that certain goods were ordered by the defendants of the plaintiffs on August 2, 1897, of a " quality guaranteed to be equal to the best you have ever sent us," but that the goods shipped " were of inferior quality and not in accordance with goods ordered and mentioned in said order." It is scarcely necessary to cite cases in order to show that a generality of this kind is not a sufficient allegation of breach of contract to prevent summary judgment. In Close v. Hancock, 3 Pa. Superior Ct. 207, Gould v. Gage, 118 Pa. 559, McBrier v. Marshall, 126 Pa. 390, and Slag Works v. Krause, 5 Pa. Superior Ct. 622, the contract of August, 1897, was an entire contract: Roberts v. Beatty,

2 P. & W. 63; Carmalt v. Platt, 7 Watts, 318; Millard v. Morse, 32 Pa. 506; Hartley v. Decker, 89 Pa. 470; Alcott v. Hugus, 105 Pa. 350.

If, therefore, the defendants found, on August 13, 1897, that the plaintiffs had been guilty of a breach thereof, they were at liberty either to return the merchandise in toto, or to retain and pay for the portion which met with their approval and return the rest.

OPINION BY W. D. PORTER, J., January 22, 1901:

In this case judgment was entered against the appellant for want of a sufficient affidavit of defense. The validity of the debt claimed by the plaintiff was not denied, but the defense is a set-off arising out of a separate transaction. The question then is whether the affidavit avers with reasonable precision and distinctness facts which would establish a valid claim against the appellee. The alleged claim which defendant attempts to set-off is founded upon the failure of the plaintiff to comply with a certain contract for the sale and delivery of goods to the defendant. The affidavit, in substance, sets forth that on August 2, 1897, the defendant company, who were merchants in Philadelphia, sent to the plaintiff, whose place of business was at Pawtucket, R. I., a written order for goods, a copy of which is attached to the affidavit. Plaintiff acknowledged the receipt of the said order and agreed to furnish the goods ordered in kind and of the quality and on the conditions named in said order, and on or about August 11, 1897, shipped certain goods for the filling of said order, and on August 13, 1897, the same were delivered to and opened by defendant. "Upon inspecting the goods defendant found that all of said goods were of an inferior quality, and not in accordance with the goods ordered and mentioned in said order, except 815 feet and 6 inches of rawhide lacing, in sides, which defendant retained and paid for. The balance of said goods were shipped back to plaintiff, with a request that plaintiff send the kind and quality of goods specified in said order. Plaintiff answered and stated that said goods would be sent according to order at the earliest possible moment. Plaintiff never sent the goods as requested, and in accordance with its promise, and the defendant, on November 26, 1897, was compelled to go out in the

market and purchase said goods at an advance in price." Then follows a list of the goods so alleged to have been purchased and the prices paid for them, and the assertion that in the aggregate the prices so paid exceeded by $36.46 what the defendant would have paid for the goods had plaintiff complied with its alleged contract to deliver the same. The order attached to the affidavit directed the plaintiff to "ship via freight as quickly as possible 2 doz. sides rawhide lace, large sides, from 20 to 25 feet each. Three doz. sides rawhide lace from 16 to 20 feet each;" and a quantity of cut lace rawhide of designated classification. It thus appears that the order was for a distinct number of sides of rawhide lacing. The affidavit admits that defendant received, retained and paid for 815 feet and six inches of rawhide lacing, in sides, but it does not state the number of sides which it took to make up that quantity, and furnishes no means by which the number of sides so accepted can be determined. If the sizes of these sides of leather were not as large as the defendant designated in its order, it need not have received them, but having retained and paid for them it cannot now be heard to allege that they did not contain as much leather as sides of the class mentioned in the order: Markley v. Stevens, 89 Pa. 279. The defendant must be held to have accepted these sides to the number actually received by it as in discharge of its contract of purchase; it does not assert in what number they were short of the contract, and as to that item of the claim of set-off the affidavit is therefore defective.

As to the several items of cut lace rawhide, the order failed to designate with precision the price which was to be paid. The only mention of price contained in the order was in two distinct sentences, viz.: "The price to be $14\frac{1}{2}$ cents per foot on side lace, 70 and 5 per cent on cut lace;" "3. If prices are not specified they are understood to be no higher than last bill or quotation." Neither the order nor the affidavit contained any suggestion as to what the last quotation had been. If the words and figures in the first sentence above quoted, relating to cut lace leather, were intended to convey the idea that the goods were to be sold at seventy and five per cent off some list or card price, upon complying with certain conditions, those conditions ought to have been embodied in the order, or distinctly set forth in the affidavit of defense, as well as the list

price from which the deduction was to be made. The allegation, therefore, that the defendant was compelled to pay more in the market than it would have been required to pay under the contract, fails to meet the requirements of such a case, in that neither the affidavit nor the order for the goods made clear what price had been agreed upon between the parties. The affidavit is defective in that while the order contemplates a delivery of the goods to a carrier at Pawtucket, and, therefore, a change of ownership and possession at that point, the defendant in attempting to measure his loss because of the plaintiff's alleged failure to perform the contract, does not state in what market he bought the goods, but, if anything can be fairly inferred from the affidavit, he supplied himself in Philadelphia with goods to take the place of those which the plaintiff ought to have delivered in Pawtucket. There is no suggestion of what the cost of transportation from Pawtucket to Philadelphia was, nor is there anything said from which it can be assumed that the market price in one place was any evidence of the market value in the other. It appears upon the face of this affidavit that this entire negotiation was in writing, the plaintiff's acceptance of the order, and the subsequent alleged agreement to send other goods to supply the place of those returned, as well as the order of the defendant. Yet the defendant does not attach copies of these letters, written by the plaintiff, but contents himself with giving in his affidavit the alleged substance of those letters. This is not the proper way to state a contract, the entire evidence of which is in writing.

There was no error in the entry of judgment in default of a sufficient affidavit of defense. The judgment is affirmed.