# Eastburn, Appellant, v. United States Express Company.

*Negligence—Infant—Coasting on sled—Wagon—Evidence.*

Where a large sled holding seven boys coasts down a hill to a city street and either strikes a wagon between its front and back wheels, or is struck by the front wheels of the wagon, and one of the boys is injured, and there is nothing to show that the driver of the wagon saw or could have seen the sled in time to prevent the accident, the driver cannot be charged with negligence merely because he was driving at a high rate of speed.

Argued March 22, 1909. Appeal, No. 347, Jan. T., 1908, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., March T., 1905, No. 416, for defendant non obstante veredicto in case of Margaret H. Eastburn, in her own right, and William D. Eastburn, a minor, in his own right, by his next friend, the said Margaret H. Eastburn, v. United States Express Company. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial it appeared that the plaintiff, a boy nine years old, was injured on Saturday afternoon, January 14, 1905, in a collision between a sled on which the boy was coasting and a wagon of the defendant. The accident occurred at the junction of Rubicam and Collom streets. There were seven boys on the sled with the plaintiff in front. The hill on which the boys were coasting was very steep. Four boys testified as to the facts of the accident. The two older boys testified that the collision occurred at a point about the middle of the two streets, and that the sled struck the wagon between the front and the back wheels of the wagon. The two younger boys testified that the sled was struck by the front wheel of the wagon somewhere between the center line of Rubicam street and the east curb. When the boys were near the bottom of the hill they saw the horse and wagon and attempted to turn

the sled to the right to avoid the wagon. There was testimony that the wagon was being driven at a high rate of speed, and that one of its wheels passed over plaintiff. There was also testimony that as the boys came down they were shouting "Ike, Ike, the railroad spike."

The jury returned a verdict for Margaret H. Eastburn for $2,000 and for William D. Eastburn for $1,100.

On motion for judgment non obstante veredicto von MOSCHZISKER, J., filed the following opinion:

This was not a case of one in plain sight and about to cross the street in front of a horse, with opportunity on the part of the driver to see the person and avoid an accident, but was a case of a sled moving rapidly, beyond sufficient control of the boys to avoid a collision with one who had no reasonable expectation to look for such an event. In this aspect of the case, the speed of the horse, in our opinion, did not cause the accident, because we cannot see how that speed in any way contributed to the result. At best, the testimony on the subject of the speed of the wagon was vague. It was to the effect that the horse was going on a gallop, which at least one of the witnesses described as going fast. But one of the boys testified that the sled was going faster than the wagon. As a practical matter, therefore, if the wagon had arrived at a point opposite the middle of Rubicam street or east of that middle, and was struck there by a rapidly moving sled, which all the witnesses say was being turned to the right to avoid an accident, it must necessarily be that the sled was a considerable distance up the hill when the horse and wagon appeared in sight. How the driver could be charged with negligence under these circumstances is not clear, and we are of opinion that the jury by their verdict were not warranted in such a finding.

There is evidence that there were children with sleds at the bottom of the hill on Collom street at the time of the accident, but whether that meant that they were standing there before the accident or that they arrived at the bottom at the same time as the large sled is not clear. Neither were their positions in the roadway shown, but if it was clear from the evidence

that certain children were standing with their sleds in the roadway in a safe place that fact would not put a driver upon notice that a large sled was likely to run into his wagon at great speed and require him to take steps to avoid that possibility.

There is also evidence that the boys called out loudly, "Ike, Ike, the railroad spike" as they came down the hill, but even were it clear that the sound was loud enough to reach the driver's ears, it is difficult to see what idea it could convey to his mind if he did not see the boys. The sounds of boys' voices in the streets on Saturday is certainly not sufficient warning to require a driver to stop his team and make inquiry as to the location of the sounds and their meaning.

A number of questions were asked the surveyor with a view of ascertaining at what point upon the hill the driver could have seen the boys had he been looking across the corner of the two streets and before he reached the corner, but the answers throw no light upon the question of negligence, because they were purely hypothetical and assumed as facts what the evidence did not disclose. There was nothing in the evidence to show that the sled was at any exact point upon the hill when the driver was approaching the corner, and the respective speeds of the sled and the wagon not having been taken into consideration in the calculation the result is pure conjecture. But assuming that the driver when he arrived at the corner could have seen the boys at a considerable distance up the hill coasting down toward him, was he obliged to anticipate the possibility of their steering their sled into his wagon? We do not think he was.

The driver's story, to the effect that the sled appeared like a shot out of a cannon, graphically describes the incident, and we do not find that his own admission that when he was walking on that street a night or two before he had seen children sledding on that hill, charges him with negligence on the occasion when the accident occurred. The mere fact that children coasted on that hill without injury on one occasion, while it was properly admitted as evidence, cannot charge the driver with negligence because his wagon was struck in the side by a

sled on a subsequent occasion. It is manifest that the driver was lawfully upon the road, and there is nothing in the evidence to warrant the imposition of a duty upon him when he arrived at the corner to stop his team and wait until all the children coasting down that hill should have arrived safely at the bottom.

In many particulars the case of Gould v. Traction Company, 190 Pa. 198, tried in this court, is strikingly like the case at bar. There a young boy, while riding a bicycle on a street running at right angles to the street upon which the defendant company operated its cars, either ran into the car or the car ran into the bicycle. As is shown by the paper-books on appeal, there was testimony both ways, but the Supreme Court in its opinion states that the car was struck by the bicycle. In that case, as in the present one, the plaintiff claimed that the defendant was negligent in operating its vehicle at an undue speed, and in not avoiding the accident upon due opportunity, and also, as before stated, there was some testimony on the part of the plaintiffs to the effect that the vehicle had run into him and that he had not run into it. Several witnesses for the plaintiff testified in a general but much more exact way to the speed of the car than in the case at bar. In disposing of the case the Supreme Court said: "The speed of the car, however, did not cause the accident. The collision occurred within a moment of the time the plaintiff turned into Tenth street. If the car had been standing still, and the plaintiff had taken the same course, he would have run into it. His difficulty was that he could neither stop quickly nor remain on his bicycle if he stopped. . . . The plaintiff was not misled by the movement of the car, nor surprised in an attempt to do what ordinarily he might have done with safety. He turned toward the car when it was then at his side, because he could neither go forward nor stop. The motorman was not under the circumstances negligent in not seeing him; if he had seen him it was too late to avoid the collision." With a very little variation, those words could be applied to the case at bar.

The case of Gould v. Traction Company, 190 Pa. 198, clearly shows that where the testimony as to the speed is of

the nature of the testimony in the case at bar, or where the alleged excessive speed cannot reasonably be found from the evidence to be the proximate cause of the collision, that the question of speed should not be submitted to the jury. Also see Moss v. Traction Company, 180 Pa. 389; Cominskey v. Railway Company, 4 Pa. Superior Ct. 631; Yingst v. Railway Company, 167 Pa. 438; and Hooper v. Traction Company, 17 Pa. Superior Ct. 638. In the case at bar it is clear that there was not sufficient in the testimony to reasonably justify a finding by the jury that the horse was being driven at such a speed as to constitute negligence, or even if the horse was going at an undue speed, that the speed contributed to the happening of the accident. The sled was going much faster than the horse and wagon. If we view it that the sled passed between the front and hind wheels of the wagon, or if we view it that the front wheels first came in contact with the sled, in either event, if the horse had been going at a less rate of speed, the conclusion is irresistible that the sled would have struck the horse instead of the wagon, and, in all probability, the injury would have been greater than under the present circumstances. On this point see Goshorn v. Smith, 92 Pa. 435; Pletcher v. Traction Company, 185 Pa. 147; Downey v. Railways Co., 219 Pa. 592. The rate of speed at which the horse was going is really immaterial, for a review of the testimony leads one irresistibly to the conclusion that the sled suddenly darted out and struck the wagon under such circumstances that it cannot be justifiably said that the driver, as an ordinarily careful man, was bound to have seen and avoided the collision. The case is strikingly similar to that of a child who suddenly runs into the front of a moving vehicle, where it has uniformly been held there can be no recovery: Keller v. Railroad Co., 214 Pa. 82, and cases there cited. We cannot hold drivers to be negligent when their only fault is a failure to avoid a collision under circumstances whieh are unusual and not likely to be anticipated: Baker v. Fehr, 97 Pa. 70; Funk v. Electric Traction Company, 175 Pa. 559; Kline v. Traction Company, 181 Pa. 276.

Much reliance is placed by counsel for plaintiffs upon the testimony of the surveyor as to distance, that is, the distance

that the wagon was from the intersecting street at the time the driver could have had a view of the boys on the sled. However, there is not any testimony to justify the jury in finding that the driver did have such a view, or that he was looking in such a direction that he must have had such a view. On the contrary, the uncontradicted testimony is to the effect that the horse was moving on a slippery street, and that the driver's attention was attracted to holding the horse up and to looking ahead, and therefore that he did not see the boys until they were at such close proximity to the wagon that in a second or so the collision occurred. "Negligence cannot be imputed because of the failure to perform a duty so suddenly and unexpectedly arising that there is no opportunity to apprehend the situation and to act according to the exigency:" McKee v. Traction Company, 211 Pa. 47. There is not any testimony to justify a finding that the driver had knowledge that the boys were sledding on the hill, or that they were likely to be sledding on the hill, at the time he was passing the foot of the hill. It cannot be doubted that for boys to come down a hill such as described in the testimony in this case, on a long sled accommodating seven children, at the accompanying rate of speed which would necessarily follow such a descent, and to run into a city street at the foot of the hill, would be a wrongful act. The tender age of the plaintiff may well have been sufficient, in the view of the jury, to excuse him from the charge of contributory negligence, but that does not change the nature of the act, and, as said in P. & R. Railroad Co. v. Hummell, 44 Pa. 375, "Precaution is a duty only so far as there is reason for apprehension. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act. If the law declares, as it does, that there is no duty resting upon any person to anticipate wrongful acts in others, and to take precaution against such acts, then the jury cannot say that a failure to take such precautions is a failure in duty and negligence."

In order to maintain the verdict the plaintiffs are bound to point to evidence which would justify men of ordinary reason and fairness in saying that the defendant's driver, if he had

exercised ordinary care, could have avoided this accident. A most careful review and scrutiny of all of the testimony satisfies us that there is not even what could be justifiably called a scintilla of evidence, which, taken in connection with the other evidence in the case, would justifiably lead to such a finding. Of course, if we were of the opinion that there was a conflict of evidence on material facts, or that the material facts taken together might reasonably be said from any point of view to show such negligence on the part of the defendant's driver, then, even though the court might be of opinion that the preponderance of the evidence was the other way, we would not disturb the finding of the jury other than to grant a new trial. Taking the most favorable view of the testimony that any reasonable mind could justifiably take for the benefit of the plaintiff, we are brought to the conclusion that the plaintiff has failed to make out his case.

The motion for judgment for the defendant non obstante veredicto is granted.

*Error assigned* in entering judgment for defendant non obstante veredicto.

*Charles Hunsicker*, with him *Jos. W. Hunsicker*, for appellants.

*James F. Campbell*, for appellee.

PER CURIAM, May 20, 1909:

The judgment is affirmed on the opinion of the court below.